CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 24 2006

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Civil Action No. 7:05CV00417 |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION** |
| v. | ) ) | |
| OLVER INCORPORATED, and ADECCO USA, INC., | ) ) ) | By: Samuel G. Wilson United States District Judge |
| Defendants. | ) | |

The Equal Employment Opportunity Commission ("EEOC") brings this action under Title VII[1] on behalf of Shannica Allen Dickenson. The EEOC claims that Olver Incorporated ("Olver") and Adecco USA, Inc. ("Adecco") discriminated against Dickenson because she is black and because she is from the Virgin Islands. The matter is before the court on the defendants' motions for summary judgment.[2] Viewing the evidence in the light most favorable to the EEOC and allowing the EEOC the benefit of all rational inferences supported by their forecast evidence, the court finds that the EEOC has failed to demonstrate a genuine issue of material fact as to whether Adecco took an adverse employment action against Dickenson and grants Adecco's motion for summary judgment. However, the court finds that the EEOC has demonstrated genuine issues of material fact regarding the claim against Olver and denies Olver's motion for summary judgment.

I.

---

[1] 42 U.S.C. §§ 2000e et seq.

[2] The EEOC has also filed a motion for partial summary judgment on the issue of Olver and Adecco's joint liability. Because the court finds that Adecco is entitled to summary judgment, the court will deny that motion.

The following is a rendition of the events surrounding Dickenson's employment at Olver drawn from undisputed facts, all evidence forecast by the EEOC, and any evidence forecast by Olver and Adecco which the EEOC has not forecast evidence capable of contradicting or impeaching.[3] In March 2004, Olver placed an ad in a local newspaper seeking a receptionist. Olver typically relied on Adecco to supply them with administrative and clerical personnel; however, after unsuccessful efforts through Adecco, Olver decided on a direct search. Dickenson visited Olver on March 8 to inquire about the job. Robin Weyer, Olver's administrative staff supervisor and senior secretary, and Jim Foreman, Olver's former financial controller, interviewed Dickenson and ultimately hired her as a receptionist. Olver referred Dickenson to Adecco to fill out the necessary paperwork for placement at Olver, including payroll documents. During Dickenson's initial visit, Adecco gave Dickenson a handbook detailing, among other things, the proper procedures for calling in sick and for reporting workplace harassment or discrimination.

Dickenson began work as Olver's receptionist on March 10, 2004. Several of Dickenson's coworkers, including Weyer, Foreman, Olver president Bob Sallach, Olver engineer

---

[3]"[On summary judgment,] the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." See Reeves v. Sanderson Plumbing Products, 530 U.S. 133 (2000) (internal quotes omitted). Moreover, "[i]n general, the chance that an unimpeached witness, *even an interested one*, will be disbelieved is not enough to defeat a motion for summary judgment." Wilson v. City of Des Moines, Iowa, 293 F.3d 447, 454 (7th Cir. 2002) (emphasis added). See also Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985 (1992). ("[N]or would [the plaintiff] automatically be entitled to a trial simply in the hope that the jury might disbelieve consistent, plausible, and otherwise unimpeached testimony from four other witnesses, even if (dubitante) they were technically 'interested' parties.'").
Moreover, as a former Olver employees, Splitt's and Foreman's interests in Olver are diminished, if not eliminated.

2

Case 7:05-cv-00417-SGW-PMS   Document 50   Filed 07/24/06   Page 2 of 7   Pageid#: 878

Shawn Veltman, and former Olver secretary Amy Splitt observed performance issues from day one, including trouble operating the phone system, dropped or lost calls, mispronunciation of employees' names, misidentification of the company as "Oliver" when speaking with clients, incorrect grammar when speaking with clients, inaccurately relaying phone messages, and speech that was difficult to understand due to accent. For example, Sallach was out of the office when Dickenson started work, and when he attempted to call into the office over the course of Dickenson's first two days, Dickenson dropped or misdirected his calls several times. Sallach also noted Dickenson's difficulty pronouncing "Olver" during those calls, and Dickenson attempted to relay a phone message but gave Sallach the wrong name and phone number. Dickenson does not deny that she may have dropped "some" calls, mispronounced coworkers' names, and mispronounced the company's name; she also concedes that she "probably could have" used incorrect grammar.

Reflecting on her short time at Olver, Dickenson claims to have had strained relations with Olver engineer Shawn Veltman. On one occasion, Veltman refused to acknowledge Dickenson when entering the office, despite multiple greetings. According to former secretary Splitt, Veltman told Sallach, "We can't have a Jamaican representing the company on the phone."[4] Veltman emailed Foreman early in the morning of Dickenson's third day, complaining about incorrect grammar and dropped calls, and he implored Foreman to "find someone that can speak proper English." Foreman responded essentially by saying that Dickenson needed more

---

[4] In his deposition, Veltman denies having ever made the comment. Also, Splitt claims that she learned of the comment through Weyer, but Weyer denies having ever heard Veltman make the comment. Because this matter is before the court on a motion for summary judgment, the court must view the evidence in the light most favorable to the EEOC, as the non-movant, and must disregard Veltman's and Weyer's testimony for the time being.

time to learn and that she was the most qualified candidate he had interviewed. That same day, Sallach called Foreman to discuss his difficulty getting through on the phone, as well as Dickenson's difficulty pronouncing "Olver" and the inaccurate phone message. Foreman construed his conversation with Sallach as an order to terminate Dickenson. Therefore, on March 16, 2004, after Dickenson had spent only four and a half days on the job, Foreman had Weyer take Dickenson aside and tell her that Olver was terminating her employment. Weyer gave no specific reason for Dickenson's termination;[5] however, Weyer prepared a memo to file citing a "language barrier" as the reason for Dickenson's termination. When asked about Dickenson's termination, Splitt says that Dickenson just needed more time to learn her job; that Dickenson was steadily improving; and that Dickenson's Caucasian predecessor, who Olver also fired for reasons unknown to Splitt, "messed up even after having been there for a year." Soon after Dickenson's exit, Olver hired a white replacement. Olver terminated her, though, after only a short time on the job, citing her poor performance.

After her termination, Dickenson returned to Adecco only to find that Adecco had entered "Reason for termination: accent/dialect" in her employment file. Adecco offered to search for a new placement for Dickenson, but Dickenson rejected the offer and eventually found employment elsewhere. Reflecting on her experience with Adecco, Dickenson says that she has no reason to believe that anyone at Adecco played a role in her termination at Olver and that no one at Adecco ever said or did anything discriminatory to her.

## II.

---

[5]In her deposition, Weyer testifies that she told Dickenson that the reason for her termination was her failure to properly operate the phone system and to correctly pronounce names; however, for purposes of summary judgment, the court will disregard Weyer's testimony.

4

Even assuming Adecco was Dickenson's "employer" for purposes of Title VII,[6] as part of its prima facie case, the EEOC must demonstrate that Adecco took an adverse employment action against Dickenson. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514-18 (4th Cir. 2006) (ADEA case)[7]; White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir.2004). Viewing the evidence in the light most favorable to the EEOC and allowing all reasonable inferences from the EEOC's forecast evidence, the court finds that the EEOC has failed to demonstrate a genuine issue of material fact that Adecco took an adverse employment action against Dickenson. See Fed. R. Civ. P. 56; Warch, 435 F.3d at 513 (setting out summary judgment standard) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding also that a failure of proof on an essential element "necessarily renders all other facts immaterial"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The EEOC has failed to forecast evidence from which a finder of fact could conclude either that Adecco played a role in Dickenson's discharge or that Adecco shared control over employees placed with Olver to the point of rendering Adecco jointly liable for Olver's employment decisions. Accordingly, the court finds that Adecco is entitled to summary judgment.

---

[6] Compare Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F.Supp. 344, 349 (S.D.N.Y.1984) (assuming that employee who brought Title VII complaint against company to which she was assigned by temporary agency was employee of temporary agency), aff'd sub nom. Aharnare v. Marrill Lynch, 770 F.2d 157 (2d Cir.1985), with Williams v. Caruso, 966 F.Supp. 287, 295-96 (D.Del.1997) (holding that employment agency was not plaintiff's employer because it did not play a role in the manner and means by which plaintiff worked).

[7] Warch involved a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. However, with very few exceptions, the standards and analysis under Title VII and the ADEA are interchangeable. See Thurston v. TWA, 469 U.S. 111, 121 (1985); E.E.O.C. v. Seafarers Intern. Union, 394 F.3d 197, 203 (4th Cir. 2005).

The EEOC simply has failed to forecast a single piece of evidence from which the finder of fact could conclude that Adecco played or even could have played a role in Dickenson's discharge from Olver. Indeed, Dickenson even testified that she has no reason to believe that Adecco played a direct role in her termination. As for the EEOC's joint liability argument, the EEOC relies on the undisputed facts that Adecco placed temporary employees with Olver, administered payroll for those employees, and served as the party to whom those employees could call in sick or report discrimination. However, a finder of fact considering these acts, without more, could not reasonably infer that Adecco exercised the sort of day-to-day control over Dickenson necessary to render Adecco jointly responsible for Dickenson's termination. See Watson v. Adecco Employment Servs., Inc., 252 F.Supp.2d 1347, 1356 (M.D.Fla.2003); Williams v. Caruso, 966 F.Supp. 287, 296 (D.Del.1997); Astrowsky v. First Portland Mortgage Corp., 887 F.Supp. 332, 333 (D.Me.1995).

## III.

The EEOC has forecast evidence with the potential to demonstrate disparate expectations and treatment of individuals similarly situated to Dickenson. Viewing this evidence in the light most favorable to the EEOC, as the court must at this juncture, the court finds that there is at least a possibility that a reasonable trier of fact could find that race and/or national origin played a role in Dickenson's termination. Accordingly, the court denies Olver's motion for summary judgment.

## IV.

For the foregoing reasons, the court grants Adecco's motion for summary judgment and denies Olver's motion for summary judgment.

6

**ENTER:** This 24th day of July, 2006.

                                                                                 _____
                                                                                  United States District Judge